[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
I. FACTS
Amanda L. born 9/93, is the only child of Tracie L. and Edwin L. In July of 1999 Tracie L. filed for divorce in Danbury Superior Court. In August, 1999 she received a temporary restraining order barring Mr. L. from the family home. At that time, Mrs. L. had sole custody of Amanda L. As the case progressed, the Court ordered Tracie L. not to cohabit with her boyfriend, who had a criminal record. She was also ordered not to allow her boyfriend to have any contact with her daughter. On August 1, 2001 Mrs. L. admitted that she had violated the aforesaid court order and had lied under oath when she had previously testified that she had not seen her boyfriend when, in fact, she and Amanda were living in his house. Upon hearing the aforesaid facts, the Court (Frankel, J.) ordered that sole custody be with the father Edwin L. Mr. L. had sole custody of Amanda until August 23, 2001. At that time, the Court (Frankel, J.) became aware of statements of sexual abuse made by Amanda against her father, and issued an Order of Temporary custody from the bench. On said date, the Department of Children and Families (DCF) placed Amanda L. in foster care where she has remained until this day. The parents have had limited supervised visitation with Amanda during this period of time.
In view of the fact that DCF had an OTC and neglect case against Mr. L. and Mrs. L., the custody aspect of the divorce case was transferred to the Danbury Superior Juvenile Court. Therefore, this opinion will discuss both the neglect and custody claims. The divorce decision is being issued on today's date in a separate opinion.
The mother has filed a motion for sole custody. The father has filed a motion for sole custody. The maternal grandmother, Nancy P., has intervened and offered herself as a resource for Amanda. Mr. L. sister has also offered herself as a resource. DCF is requesting a finding of neglect, but suggests that custody be with the mother with a period of protective supervision. CT Page 8203-a
II. LAW
Pursuant to C.G.S. Section 46B-120 et seq. a child may be found to be "neglected" if that child is being denied proper care and attention physically, educationally, or morally, or is being permitted to live under conditions, circumstances or association injurious to her well-being,
The standard of proof is a fair preponderance of the evidence, which must be established by DCF. Darrow vs. Fleischner 117 Conn. 518,168 A. 147 (1933). DCF further alleged that Mr. L. sexually abused Amanda. In order for the Court to find in its favor, DCF need only move one of its neglect allegations.
III. DISCUSSION
Golda Meir once said that there would "never be peace in the Middle East until the Palestinian people learned to love their children more than they hated the Israeli people." Unfortunately, a paraphrase of that quote is appropriate to this matter. Amanda will never be content until her parents discover that they love her more than they despise each other. The court has heard twenty-seven days of testimony on the neglect case, and another four days on the divorce case. The litany of court violated orders and disastrous visitations with police involvement is odious to the Court. Amanda has been placed in the middle of a court battle wherein each side broke the rules in the name of winning and everyone lost, especially Amanda.
There is no question that Amanda was neglected. Tracie L. to her credit, admitted during her testimony that she had neglected Amanda by violating court orders of no contact with her boyfriend, and lying about said contact while under oath. Tracie L. is currently following DCF's recommended steps in an effort to regain custody of her daughter.
Mr. L. did not admit to any neglect. He argues that he should have sole custody of Amanda because his wife violated past court orders and lied in Court. He further argues that his wife caused Amanda to fabricate the story of his three alleged instances of sexual abuse. Yet, Mr. L. is not the white knight of Camelot whom he portrays. He also violated court orders. He visited his daughter numerous times in school during the week in violation of the court's (Petroni, J.) order that there be no weekday visitation. He moved back into the house in mid-September while the temporary restraining order barring him from the house was still in effect. When he had custody of Amanda, he did not place Amanda in counseling, despite a court order to do so. He took Amanda out of state for a vacation without either Tracie L. permission or knowledge in violation of court orders. Therefore, neither side has a stellar record CT Page 8203-b with regard to obedience of court orders. They wish to use the court and its orders only while it suits their purposes in total disregard of the best interests of Amanda.
Mr. L. described the multitude of times when he was not allowed the proper phone conversation time with Amanda, which was court ordered. There were numerous visitations wherein Mrs. L. would be late picking up Amanda at the designated drop off point and Mr. L. would drive to Mrs. L. boyfriend's house to drop off their daughter. At one point, he even took a picture of Amanda with the boyfriend's child in front of the boyfriend's house, in order to show that the wife was violating the no contact order. There were numerous contempt motions, police calls, and temporary restraining order applications, of which only one was granted.
The history of the case is such that, at this time, the court has no confidence that either Mr. L. or Mrs. L. would ever comply with any orders related to Amanda's custody and visitation. Their behavior in this matter has shocked the conscience of the court. In time, both parties must realize that full compliance with the court orders is not only mandatory, but also in Amanda's best interest. It is hoped that Mrs. L. will have an epiphany through her continued therapy. To date, Mr. L. has rejected his need for counseling. Clearly, the torment over the visitation and violated court orders on the part of Mr. L. caused Amanda to be denied proper care and attention, and Amanda was allowed to live under conditions injurious to her well-being. DCF has met its burden on the aforesaid grounds and the court finds that Amanda was neglected by both parents.
The allegation with respect to sexual abuse on the part of Mr. L. has not been proven by a fair preponderance of the evidence. Amanda's story changed several times. She recanted her entire claim of sexual abuse in her interview with Dr. Mantell. There was no physical evidence of abuse discovered upon examination by any of the doctors. Mr. L. categorically denied the charges. Further, Amanda denied sexual abuse to a DCF worker at a time after her first alleged incident with her father. Therefore, the court makes no finding of neglect with respect to the sexual abuse claims.
Mr. L. has not proven by a fair preponderance of the evidence that his wife forced Amanda to invent the story of sexual abuse. One of the children called by Mr. L. did testify that Amanda told her that "Mommy was making her say bad things about Daddy." However, this statement is too amorphous to constitute proof by a fair preponderance of the evidence. Amanda reportedly made several statements about her father to the effect that he was mean; that he yelled a lot; that she liked Mommy better than Daddy, and that she once called her father grandpa, CT Page 8203-c supposedly in reference to the age differential between Mr. L. and Mrs. L. If the child witness is to be believed, the Court is left to surmise and speculation with relation to what bad things Mommy may have wanted Amanda to say about Daddy. There is evidence that Mrs. L. improperly interfered with Amanda's interview with Dr. Mantell when she asked Amanda what she told Dr. Mantell regarding the alleged "touching" by her father. Mrs. L. in fact, contacted Dr. Mantell to ask that he re-interview Amanda when she heard that Amanda denied any sexual abuse. There is also a curious correlation between the alleged dates of sexual abuse, and dates when Mr. and Mrs. L. had had a particularly difficult period. However, the events recited do not rise to proof by a fair preponderance of the evidence. They are further examples, however, of Mrs. L. failure to obey court orders. Therefore, Mr. L. claim in this regard is not proven by a fair preponderance of the evidence. Amanda is adjudged a neglected child.
IV. DISPOSITION
Based upon the foregoing it is clear to this court that, at this time and in the foreseeable future, neither parent should have custody of Amanda. Hence, both mother's motion for sole custody and father's motion for sole custody are hereby denied.
It is also the opinion of this Court that Amanda should no longer be in foster care. She should be, as Dr. Mantell stated, in a conflict free environment around people who love her.
Her maternal grandmother, Nancy P. has been present almost every day of the trial. She owns several homes in Vermont and would be able to devote full time attention to Amanda. Mr. L. sister, a nurse, and Lt. Colonel in the Reserves is also a suitable caretaker. Both Mrs. P. and Ms. L. have been approved by interstate compact studies.
The Court finds that both Mrs. P. and Ms. L. would provide excellent homes for Amanda. However, Ms. L. is engaged to be married, and her job may require that she obtain child care for Amanda. She is also in the reserves one weekend every month. Mrs. P. has no such restriction. Therefore, this Court orders that sole custody and guardianship of Amanda be transferred immediately to Nancy P. with a period of one year protective supervision.
Amanda Lewis is to live with Nancy P. in her home in Vermont until further order of the Court. The Court makes the following orders with respect to the protective supervision:
1. DCF is to provide Nancy P. with parenting classes. CT Page 8203-d
 2. Amanda is to engage in weekly therapy in Vermont immediately. Her therapist is to be given a copy this opinion and Amanda's full evaluation by Dr. Mantel.
3. Amanda L. is to attend school in Vermont.
 4. Mother is to continue her therapy and comply with DCF specific steps. Mother's therapist is to be given a copy of this opinion and her portion of Dr. Mantells' evaluation.
 5. Father is to engage in counseling. His therapist is to be given a copy of this opinion and his portion of Dr. Mantell's evaluation.
 6. Commencing July 6, 2002 mother is to have unsupervised visitation with Amanda from 10:00 a.m. to 5:00 p.m. and every other Saturday thereafter with the exception of Holidays enumerated in this visitation order.
 7. Commencing July 13, 2002 father is to have unsupervised visitation with Amanda from 10:00 a.m. to 5:00 p.m. and every other Saturday thereafter with the exception of Holidays enumerated in this visitation order.
 8. Amanda is to be picked up promptly at 10:00 a.m. at Nancy P. home and dropped off at 5:00 p.m. at the same location. Nancy P. is to notify DCF of any violation of these visitation times.
 9. Amanda may call either of her parents at her request at any time.
 10. Neither parent is to call Amanda except on her birthday.
 11. Both parents may call Amanda on her birthday. Mrs. L. may call between 6:00 p.m. and 7:00 p.m. on that day and Mr. L. may call between 7:30 p.m. and 8:30 on that day.
12. Mrs. L. may visit with Amanda from 10:00 a.m. to 5:00 p.m. on Mother's Day. CT Page 8203-e
 13. Mr. L. may visit with Amanda from 10:00 a.m. to 5:00 p.m. on Father's day.
 14. Mr. L. may visit Amanda on Thanksgiving Eve from 5:00 p.m. to 10:00 p.m.
 15. Mrs. L. may visit with Amanda on Thanksgiving from 10:00 a.m. to 8:00 p.m.
 16. Mr. L. may visit with Amanda on Christmas Eve from 5:00 p.m. to 10:00 p.m.
 17. Mrs. L. may visit Amanda on Christmas Day from 10:00 a.m. to 8:00 p.m.
 18. Mr. L. may visit with Amanda on New Year's Day from 10:00 a.m. to 8:00 p.m.
 19. Under no circumstance, until further order of this court, is Mrs. L. to stay overnight at Mrs. P house while Amanda is present.
 20. Mrs. L. may visit Amanda with her mother, her sister and her sister's children. She is not to have any adult male present during visitation with Amanda.
 21. Mr. L. may visit Amanda with his mother and sister. He is not to have any other male or female present during the visitation.
 22. On September 30, 2002 DCF shall submit to this Court a report from Amanda's therapist regarding her progress. The report should answer the specific question: Is increased visitation with her mother and father in Amanda's best interest? If the answer to that question is in the affirmative and there have been no violations of the Court Orders on visitation, and the court has received positive reports from Mrs. L. therapist and Mr. L. therapist the visitation will be increased from 10:00 a.m. to 5:00 p.m. on alternating Saturdays to 10:00 a.m. to 5:00 p.m. on both Saturday and Sunday on alternate weekends.
23. On December 30, 2002 DCF shall submit to this Court a report from Amanda's therapist regarding her CT Page 8203-f progress. That report should answer the specific question: Are overnight weekend visits with her mother and father in Amanda's best interest? If the answer to that question is in the affirmative, and if the Court has received updated positive reports from Mrs. L. therapist and Mr. L. therapist, and if there have been no violations of the courts orders or other visitation, then the weekend visits as stated as aforesaid shall include overnight stays on Saturday nights.
 24. On March 30, 2003 DCF shall submit to this Court a report from Amanda's therapist regarding her progress. This report shall answer the following question: Is it in Amanda's best interests to have vacation time with her mother and father? If the answer to that question is in the affirmative and there haven been no violations of court orders, and if the Court has received updated positive reports from Mrs. L. therapist and Mr. L. therapist; then each parent shall have two weeks vacation with Amanda. Mrs. L. shall have two weeks in July and Mr. L. shall have two weeks in August.
 25. On or before July 1, 2003 DCF shall submit a report from Amanda L. therapist regarding her progress and need for further therapy. That report should answer the following questions: Is it in Amanda's best interest to stay with her grandmother or should she be in the custody of one of her parents? If she should be in the custody of one of her parents which one does the therapist recommend?
26. On or before July 1, 2003 the Court should receive an updated report from both Mr. L. and Mrs. L. therapist regarding their progress. These reports should answer the following questions. Does the parent realize the harm done to the child by his or her action? Can the parent obey all court orders in the future? Can the parent cooperate with the other parent to facilitate visitation with Amanda? Can the parent communicate with the other parent on an adult level to facilitate visitation with Amanda? Can the parent say only positive things about the other parent in front of Amanda? The court should also receive a report from Mrs. P. concerning her observations of Amanda CT Page 8203-g while in her custody, and Amanda's development throughout the year. The report should include her wishes concerning future custody. Upon review of all the reports and after hearing arguments of counsel the Court will make further orders regarding Amanda's custody, visitation and support.
 27. Both parents are ordered to say only positive remarks about the other parent in the presence Amanda.
 28. Neither parent shall contact Amanda's therapist. The parents shall meet with Amanda's therapist only at the request of the therapist.
 29. DCF shall request support payments from both parents to Nancy P in accordance with child support guidelines.
 All contempt motions outstanding are hereby denied with respect to all parties. The Court could not find any willful violations as claimed.
V. CONCLUSION
Based upon the foregoing, Amanda is adjudged as a neglected child by a fair preponderance of the evidence. Sole custody and guardianship of Amanda is awarded to her maternal grandmother, Nancy P., until further order of the Court, with one year protective supervision with DCF. Mother and father shall have unsupervised visitation in accordance with the schedule established by the Court in this opinion
THE COURT
BY
DENNIS EVELEIGH, J.